UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――――――――

VIANT TECHNOLOGY HOLDING INC.,

                       Plaintiff,

               -v-

CHRIS VANDERHOOK and TIMOTHY VANDERHOOK,

                       Defendants.

23-CV-1347 (JPO)

OPINION AND ORDER

―――――――――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

      Plaintiff Viant Technology Holding Inc. ("Viant") brings this action against Chris Vanderhook and Timothy Vanderhook ("the Vanderhooks") for breach of contract. The parties are the owners and members of Xumo JV Holdings LLC, and the suit arises out of a call for additional capital to pay a settlement that resolved claims arising out of a legal engagement between the company and the law firm, Gibson, Dunn & Crutcher LLP. Viant alleges that the terms of the governing LLC agreement obligate the Vanderhooks to pay their proportionate share of the settlement payment. Defendants have moved for dismissal under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is denied.

**I.    Background**

      **A.    Factual Background**

      The following facts are taken from the Complaint and are assumed true for purposes of the motion to dismiss.

      Viant is a Delaware corporation with its principal place of business in New York. It is a wholly owned subsidiary of Dotdash Meredith, Inc. ("DDM"). (ECF No. 8 ("Compl.") ¶¶ 1, 8.) Chris Vanderhook and Timothy Vanderhook are individuals who reside in California. (*Id*. ¶¶ 9-

1

10.) On October 4, 2016, Viant and the Vanderhooks executed a limited liability company agreement ("LLC Agreement") governing the operation of Xumo JV Holdings LLC ("Xumo"). (*Id*. ¶ 14.) Under the LLC Agreement, Viant held a 60% ownership stake in Xumo and the Vanderhooks each respectively held a 20% stake. (*Id*. ¶ 15.) The LLC Agreement designates each of the owners as "Members." (*Id*.)

Under Section 2.2 of the LLC Agreement, Xumo's Board of Managers may require Members to make additional capital contributions, in proportion to their ownership stake, "to pay any operating, capital or other expenses" related to the business. (*Id*. ¶ 16.) Section 15.16 provides that each Member is entitled to specific performance in the event of breach of the LLC Agreement. (*Id*. ¶ 18.) The LLC Agreement also provides that any legal action arising out of the agreement may be brought in this District or in the Supreme Court of New York, New York County. (*Id.* ¶ 19.)

On February 26, 2019, Xumo retained the law firm Gibson, Dunn & Crutcher LLP ("Gibson Dunn") to perform legal and advisory work in connection with the contemplated sale of Xumo's internet television service to a third party. Chris Vanderbook, in his capacity as Chief Operating Officer of Xumo, executed the engagement agreement on behalf of Xumo. (*Id.* ¶¶ 2, 20.) Between February and August 2019, Gibson Dunn performed work for Xumo and billed approximately $793,377.80. (*Id*. ¶ 21.) The Vanderhooks each respectively acknowledged responsibility for their share of Gibson Dunn's fees as Members of Xumo, and they expressed this understanding to both Meredith Corporation—Viant's then-corporate owner—and Meredith's successor-in-interest, DDM. (*Id*. ¶ 24.) However, neither the Vanderhooks nor Xumo paid any portion of Gibson Dunn's invoices. (*Id*. ¶ 25.)

In February 2021, Gibson Dunn obtained an arbitration award against Xumo for the payment of the firm's legal fees in the total amount of $1,107,494.26, which included damages, interest, and costs. In June 2021, the Los Angeles Superior Court confirmed the arbitration award and issued a judgment against Xumo in the total amount of $1,142,738.55, including interest. (*Id*. ¶¶ 26-27.) On April 2, 2022, DDM, acting on behalf of Xumo, agreed to make a payment of $900,000 in full satisfaction of Xumo's obligations to Gibson Dunn. (ECF No. 24 at 1, 6.) Gibson Dunn subsequently executed and filed a satisfaction of judgment, and all of Gibson Dunn's claims arising out of its engagement by Xumo were discharged. (Compl. ¶¶ 28-29.) In May 2022, the Vanderhooks each acknowledged liability to DDM for their proportionate share of Gibson Dunn's fees but failed to pay any amount to Xumo or DDM toward their share. (*Id*. ¶ 30.)

On November 11, 2022, the majority of Xumo's Board issued a notice to Viant and the Vanderhooks that the board had deemed the settlement payment made by DDM to Gibson Dunn on Xumo's behalf to be an expense relating to Xumo for which each Member was required to make an additional capital contribution. (*Id*. ¶ 31.) The Board specified that the Members owed a portion of the settlement amount in proportion to their respective ownership shares in Xumo. (*Id*. ¶ 33.) The Board also specified that each Member's obligations would be satisfied by payment of their respective amounts directly to DDM and that the payments were to be made no later than November 21, 2022. (*Id*. ¶ 36.) The Board deemed Viant's additional capital contribution to be satisfied by intercompany accounting procedures, as Viant was a wholly owned subsidiary of DDM. Neither Chris Vanderhook nor Timothy Vanderhook has paid any amount to either Xumo or DDM toward their respective obligations. (*Id*. ¶¶ 37-38.)

### B. Procedural Background

On February 16, 2023, Viant filed a complaint asserting a breach of contract claim against Chris Vanderhook and Timothy Vanderhook. (Compl.) Viant invoked the Court's diversity jurisdiction, as well as a consent to jurisdiction provision and a consent to venue provision in the LLC Agreement. (*Id*. ¶¶ 11-13.) On May 3, 2023, the Vanderhooks filed a motion to dismiss under Rule 12(b)(6). (ECF No. 18.) On June 2, 2023, Viant filed its opposition to the motion (ECF No.24), and on June 30, 2023, the Vanderhooks filed their reply (ECF No. 27). On July 17, 2023, Viant filed a motion for leave to file a sur-reply or to strike portions of the Vanderhooks' reply, arguing that the Vanderhooks raised three new arguments for the first time in their reply. (ECF No. 28.) On July 19, 2023, the Vanderhooks filed their opposition to Viant's letter motion (ECF No. 29), and the Court denied Viant's motion on February 9, 2024 (ECF No. 33).

## II. Legal Standard

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain "detailed factual allegations," but it must offer something "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In resolving a motion to dismiss, the Court must accept as true all well-pleaded factual allegations in the complaint, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

**III.   Discussion**

Viant's breach of contract claim is based on Xumo's LLC Agreement, which is governed by Delaware law.[1] Under Delaware law, to establish a claim for breach of contract, a plaintiff must adequately allege: (1) the existence of an express or implied contract, (2) the breach of some obligation imposed by that contract, and (3) resulting damages. *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

The Complaint alleges that the Vanderhooks breached their obligations under Section 2.2 of the LLC Agreement, which Viant argues requires the Vanderhooks to pay their proportionate share of the settlement payment. Specifically, Section 2.2 provides that Xumo's Members—Viant and the Vanderhooks—must contribute additional capital "in cash, in proportion to their respective Percentage Interest, as determined by the Board of Managers from time to time to be reasonably necessary to pay any operating, capital or other expenses relating to the Business." (ECF No. 8-1 at ¶ 2.2.) Section 2.2 also provides that after making such a determination, the Board of Managers "shall deliver to each Member a written notice of the Company's need for Additional Capital Contributions," including details about the purpose, the amount, the Member's proportionate share, and the payment date. (*Id.*) Section 15.16 provides that in the event of a breach of the LLC Agreement by a Member, "the nonbreaching Members shall be entitled to injunctive relief to prevent breaches of the provisions of this Agreement and specifically to enforce the terms and provisions hereof." (*Id.* ¶ 15.16.)

---

[1] The LLC Agreement provides, in relevant part: "The laws of the State of Delaware shall govern the validity of this Agreement, the construction of its terms, and the interpretation of the rights and duties arising hereunder." (ECF No. 8-1 at ¶ 15.11.) *See Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 39 (2d Cir. 2009) (holding that parties' consent is "sufficient to establish the applicable choice of law" (citation omitted)).

Viant alleges that Xumo's Board passed resolutions determining that DDM's settlement payment to Gibson Dunn was an "expense[] relating to the Business" pursuant to Section 2.2. of the LLC Agreement.  (Compl. ¶ 31.)  According to the Complaint, the Board recognized that the payment made by DDM to Gibson Dunn settled the outstanding debt arising out of the engagement between Xumo and the law firm.  (*Id*. ¶¶ 34-35.)  The Complaint also alleges that Xumo's Board issued an additional capital contribution notice in compliance with the terms of Section 2.2, notifying each Member of its obligation to reimburse DDM for its respective share of the settlement payment.  (*Id.* ¶¶ 34-36.)  The Complaint further alleges that while Viant complied with its obligations under the additional capital contribution notice, the Vanderhooks did not.  (*Id.* ¶¶ 37-38.)  Accordingly, Viant alleges that the Vanderhooks breached the terms of Section 2.2 of the LLC Agreement, entitling Viant to specific performance—namely, payment to DDM of 20% of the settlement payment from Chris Vanderhook and 20% from Timothy Vanderhook.  (*Id*. ¶¶ 45-47.)

In pursuit of dismissal, the Vanderhooks offer three main reasons why they are not obligated to make any payments in response to the capital contribution notice.  These arguments all fail to justify dismissal.

First, the Vanderhooks argue that the settlement agreement executed between DDM and Gibson Dunn is not binding on Xumo JV because DDM was not acting as Xumo JV's agent and lacked the authority to bind Xumo JV to the agreement.  (ECF No. 18 at 14-16.)  These agency-based arguments, however, fail to overcome the plain and unambiguous language of the LLC Agreement.  "Under Delaware law, the proper interpretation of language in a contract is a question of law. . . . When the language of a contract is plain and unambiguous, binding effect should be given to its evident meaning."  *Allied Cap. Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d

1020, 1030 (Del. Ch. 2006).  Under the unambiguous terms of Section 2.2 of the LLC Agreement, Xumo JV's Board of Managers has the express authority to call for additional capital contributions upon a determination that they are "reasonably necessary to pay any operating, capital or other expenses relating to the Business."  (ECF No. 8-1 ¶ 2.2.)  Section 2.2 also requires that the Board deliver the call for additional capital in a written notice meeting certain specifications.  (*Id*.)  The Complaint alleges that the Board made the proper determinations with respect to the settlement payment and adequately supported those determinations in a written notice conforming to Section 2.2's requirements.  The Vanderhooks' agency-based arguments do not overcome the Board's contractual right to call for the additional capital contribution nor the Vanderhooks' own contractual obligation to comply with it.  Although Section 6.1 of the LLC Agreement, cited by Defendants, does provide that "Members shall not have any right or power . . . to act for or bind the Company in any way" (ECF No. 8-1 ¶ 6.1), it is the Board, and not any individual Member, that issued the binding capital call in accordance with the plain and unambiguous language of Section 2.2.

Second, the Vanderhooks argue that the Board of Managers lacked the authority to ratify DDM's settlement agreement because DDM did not act on Xumo JV's behalf in signing the agreement with Gibson Dunn.  (ECF No. 18 at 16-18.)  As with the Defendants' agency-based argument, the Vanderhooks' invocation of the principles of ratification is irrelevant in the face of the plain and unambiguous contractual text, which provides the Board with the express authority to require additional capital contributions provided certain conditions are met.  As discussed above, the Complaint alleges that the Board properly followed the terms of Section 2.2 in issuing the capital call, and Defendants have failed to articulate persuasively why principles of agency or ratification would discharge their contractual obligation to comply with the Board's notice.

Third, the Vanderhooks contend that even assuming the Board's capital contribution notice was valid, a "dissolution event" absolved the Vanderhooks of any obligation to contribute additional capital. (ECF No. 18 at 18-19.) According to the Vanderhooks, the sale of Xumo LLC—the sole asset of Xumo JV—to Comcast Cable Communications, LLC on February 25, 2020 was a "dissolution event" under the terms of the LLC Agreement and triggered the "winding up" of the company. (*Id.*; ECF No. 8-1 at ¶¶ 13.1-13.2.) Upon the occurrence of a dissolution event, "the Company shall continue solely for the purposes of winding up its affairs in an orderly manner, liquidating its assets, and satisfying the claims of its creditors and Members." (*Id.* ¶ 13.2.) The Vanderhooks argue that Section 13.3 relieves them of any obligation to make additional capital contributions:

> **13.3 Deficit Capital Accounts.** If any Member has a deficit balance in his Capital Account (after giving effect to all contributions, distributions, allocations for all Allocation Years, including the Allocation Year during which such liquidation occurs), such Member shall have no obligation to make any contribution to the capital of the Company with respect to such deficit, and such deficit shall not be considered a debt owed to the Company or to any other Person for any purpose whatsoever.

(ECF No. 8-1 at ¶ 13.3.)

The plain text of the LLC Agreement, however, does not support the Vanderhooks' interpretation. As the contractual text makes clear, Section 13.3 takes effect in the scenario when a Member has a deficit balance "after . . . all contributions, distributions, [and] allocations" have been satisfied. (*Id.* ¶ 13.3.) Section 13.2 of the agreement also provides that during the winding-up process, and until Xumo's certificate of formation is formally cancelled, "all covenants contained in this Agreement and obligations provided for in this Agreement shall continue to be fully binding upon the Members." (*Id.* ¶ 13.2.) The only interpretation that gives effect to both Section 13.2 and Section 13.3 is that the Vanderhooks' obligations under Section 2.2 remain

8

intact until the cancellation of Xumo's certificate of formation and the deficit clause of Section 13.3 takes effect only after all obligations to make contributions, distributions, or allocations have been satisfied.  *See Kuhn Const., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396-97 (Del. 2010) ("We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage.").  The Vanderhooks' preferred interpretation contradicts the plain meaning of Section 13.2 and would allow a Member to defy its binding obligations by simply running out the clock until the company ceases to exist.

Accordingly, the Court concludes that Viant has adequately pleaded its breach of contract claim against Defendants.  The Complaint adequately pleads the existence of a contract (the LLC Agreement); breach of an obligation imposed by that contract (failure to comply with the capital contribution notice under the terms of Section 2.2); and damages (the non-payment of the proportionate shares of the settlement payment).  Thus, the Court denies the Vanderhooks' Rule 12(b)(6) motion to dismiss.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

Defendants shall file an answer to the Complaint within 21 days of the date of this opinion and order.

The Clerk of Court is directed to close the motions at ECF Numbers 16 and 18.

SO ORDERED.

Dated: March 4, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge